IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZA GARZON,<br><br>        Plaintiff,<br><br>        v.<br><br>ARROWMARK COLORADO HOLDINGS, LLC, d/b/a ARROWMARK PARTNERS and FIRST NATIONAL ASSETS MANAGEMENT, LLC,<br><br>        Defendants. | Case No. 16 C 11525<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Arrowmark's (Renewed) Motion to Dismiss [ECF No. 29]. For the reasons stated herein, the Court grants the Motion and dismisses Arrowmark from the case.

### I. BACKGROUND

Plaintiff Eliza Garzon ("Garzon"), a former employee of Defendant First National Assets Management, LLC ("First National"), has sued First National along with Defendant Arrowmark Colorado Holdings, LLC, d/b/a Arrowmark Partners ("Arrowmark") under Title VII for sexual harassment. The following allegations derive from Garzon's Amended Complaint and are, for purposes of this motion, accepted as true, with all

inferences drawn in her favor. *See, e.g., Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2015).

Beginning in 2013 and continuing for at least a couple years, a First National client sexually harassed Garzon. (FAC ¶ 17.) During this period, Arrowmark "was the majority owner of FIRST NATIONAL and controlled the day to day operations of FIRST NATIONAL." (*Id.* ¶ 5.) Whereas First National is an Illinois LLC with its principal place of business in Illinois, Arrowmark is a Delaware LLC with its principal place of business in Denver, Colorado. (*Id.* ¶¶ 3-4.) In 2015, First National employees (including Garzon) were advised during an office meeting attended by several of Arrowmark's senior management that Arrowmark "had taken over the business" and that Jill Jepson ("Jepson"), an Arrowmark employee, was responsible for the human resources ("HR") functions of First National. (*Id.* ¶¶ 6-7.)

Garzon complained about the harassment to her supervisor at First National, but it persisted at least until December 2015 when the client touched her breasts with an umbrella. (*Id.* ¶¶ 18-19.) Garzon again complained to her supervisor and was told this time that the client would be barred from the First National premises once the company moved in early 2016. (*Id.* ¶ 19.) After the move, however, the client returned to First National's office. (*Ibid.*) Garzon complained a third time to

her First National supervisor, who advised her to "file a formal complaint with Jill Jepson, ARROWMARK'S human resources manager." (*Id.* ¶ 20.) Garzon forwarded Jepson the email thread in which she had complained to her supervisor about the client's continuing harassment, and implored Jepson to file a formal complaint. (*Ibid.*) Garzon claims that no one from either First National or Arrowmark responded. (*Id.* ¶ 21.)

## II. <u>DISCUSSION</u>

Arrowmark seeks to dismiss Garzon's Amended Complaint under Rule 12(b)(6), arguing that she fails to state a claim against Arrowmark because it was never her employer within the meaning of Title VII. Garzon concedes that Arrowmark was not her primary employer but argues instead that it was her "joint employer" for Title VII purposes.

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must state a claim that is plausible on its face." *Adams,* 742 F.3d at 728 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim enjoys "facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Adams,* 742 F.3d at 728 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Under Title VII, an "employee" is "an individual employed by an employer," and an "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b) & e(f). A "plaintiff may have *joint* employers" for purposes of Title VII liability. *Sklyarsky v. Means-Knaus Partners, LP,* 777 F.3d 892, 895 (7th Cir. 2015) (emphasis in original); *see, Tamayo v. Blagojevich,* 526 F.3d 1074, 1088 (7th Cir. 2008). Stated differently, a plaintiff may bring a claim against a defendant who is a "de facto or indirect employer" insofar as it "controlled the plaintiff's employment relationship." *EEOC v. Illinois,* 69 F.3d 167, 169 (7th Cir. 1995). An entity other than the plaintiff's actual or primary employer "may be considered a 'joint employer' only if it exerted significant control over the employee." *Whitaker v. Milwaukee Cnty., Wis.,* 772 F.3d 802, 810 (7th Cir. 2014) (internal quotation marks omitted). Similarly, the test for determining an indirect employment relationship is the "economic realities" test, and *Knight v. United Farm Bureau Mut. Ins. Co.,* 950 F.2d 377 (7th Cir. 1991), articulates it in detail. *See, e.g., Love v. JP Cullen & Sons, Inc.,* 779 F.3d 697, 702 (7th Cir. 2015) ("[T]he five *Knight* factors are simply a more

detailed application of the economic and control considerations present in the 'economic realities' test."). The *Knight* factors are: (1) the extent of the putative employer's control and supervision over the putative employee; (2) the kind of occupation and nature of skill required; (3) the putative employer's responsibility for operating costs; (4) the method and form of payment and benefits; and (5) the length of the job commitment. *Knight,* 950 F.2d at 378-79. The first factor – the extent to which the putative employer controlled the alleged employee – is the most important. *See, Love,* 779 F.3d at 702-03.

Alas, under either the joint employer test (where control is the only lodestar) or the more detailed "economic realities" formulation (the most important factor of which is control), Garzon fails to allege that Arrowmark exerted sufficient control and supervision over her employment to subject it to Title VII liability. Garzon does not claim that any Arrowmark employee supervised or controlled her work for First National. *Cf., Mitchem v. Edmond Transit Mgmt., Inc.,* No. 10 C 1203, 2012 WL 2370669, at *3 (W.D. Okla. 2012) (dismissing complaint against city as co-employer because plaintiff failed to allege that city exercised significant control over his employment). Nor does she get at the control requirement by alleging that Arrowmark

paid her compensation or otherwise had authority to hire and fire her or other First National employees. *Cf., Thomas v. Coach Outlet Store,* No. 16 C 3950, 2017 WL 386656, at *3 (N.D. Ill. Jan. 27, 2017) (finding sufficient to state a claim allegations "that Defendants had some control over Thomas's employment because Defendants had the power to terminate Thomas's employment assignment . . . ."); *Leone v. Naperville Prof'ls, Inc.,* No. 14 C 9583, 2015 WL 1810321, at *4 (N.D. Ill. Apr. 17, 2015) (holding that plaintiff sufficiently alleged a joint employment relationship where defendant had the power to terminate plaintiff's employment for failure to follow defendant's policies). Nor does the Amended Complaint speak to any of the other *Knight* factors, such as responsibility for operating costs, length of job commitment, or the occupation and nature of skill required. *See, e.g., Mason Tenders Dist. Council of Greater New York and Long Island v. CAC of New York, Inc.,* 46 F.Supp.3d 432, 438 (S.D.N.Y. 2014) (dismissing complaint against defendant that was "silent with respect to employee discipline and supervision," made "no mention of record maintenance or provision of insurance benefits," and otherwise "altogether failed to allege the existence of . . . factors tending to support an inference that CAC and Atlas were joint employers").

Instead, Garzon contents herself with alleging three features of Arrowmark's integration with First National, all of which fail to suggest that Arrowmark exercised "significant control" over her employment or that of other First National employees. First, Garzon alleges that Arrowmark became the majority owner and "took over" First National's day-to-day operations. Majority ownership of a separate entity is flatly irrelevant to the control analysis; at best and without more, it focuses on the potential integration of two companies. *See, N.L.R.B. v. Western Temp. Servs., Inc.*, 821 F.2d 1258, 1266 (7th Cir. 1987) ("The joint employer concept . . . is not based on the integration of two companies but instead looks to the control two separate companies exert over the same employees.") (citation omitted). Similarly, Garzon's asseveration that Arrowmark "took over" First National's operations is conclusory and lacks the necessary specificity as to how Arrowmark controlled or supervised the work of Garzon or any other First National employee. *Cf., Hall v. Walsh Constr. Co.*, No. 11 C 8706, 2012 WL 3264921, at *3 (N.D. Ill. Aug. 9, 2012) (denying motion to dismiss Title VII claim where plaintiffs sufficiently alleged that defendant was their de facto employer because it "controlled the job operations, subcontractors, and day-to-day duties at some of the job sites where they worked" and because

its employees, managers, and supervisors engaged in the allegedly discriminatory conduct on job sites). That "senior management" of Colorado-based Arrowmark attended a meeting to inform First National employees about Jepson's dual HR role further undermines the plausibility of Garzon's allegation that Arrowmark "took over" the day-to-day operations of Illinois-based First National.

Garzon's second and third allegations concerning Arrowmark – that Jepson performed HR functions for First National, and that Garzon sent a single email to Jepson complaining about the harassment – fare no better. Instead of alleging control, these assertions offend the basic principle that "[a] plaintiff cannot maintain a valid Title VII claim against a defendant based on the defendant's involvement in administrative tasks related to the plaintiff's employment." *Shah v. Littelfuse, Inc.,* No. 12 C 6845, 2013 WL 1828926, at *3-4 (N.D. Ill. Apr. 29, 2013) (citation omitted) (holding that plaintiff's email to putative joint employer's agent complaining of harassment failed to "establish substantial control").

In sum, because Garzon's Amended Complaint contains no well-pleaded allegations suggesting that Arrowmark exercised sufficient control over her employment with First National to constitute her joint or indirect employer, the Court grants

Arrowmark's Motion to Dismiss. As Garzon amended her Complaint after Arrowmark initially moved to dismiss on these same grounds, this dismissal is with prejudice.

### III. CONCLUSION

For the reasons stated herein, Arrowmark's (Renewed) Motion to Dismiss [ECF No. 29] is granted with prejudice. Arrowmark is hereby dismissed from the case.

**IT IS SO ORDERED.**

---
Harry D. Leinenweber, Judge
United States District Court

Dated: December 20, 2017